**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | | |
|---|---|---|
| **514 THAT WAY LLC,** | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **Civil Action No. 3:26-cv-73** |
| | § | |
| **FEDERAL HOME LOAN MORTGAGE** | § | |
| **CORPORATION,** | § | |
| | § | |
| | § | |
| *Defendant.* | § | |

**FEDERAL HOME LOAN MORTGAGE CORPORATION'S
MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER
AND BRIEF IN SUPPORT**

**TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF TEXAS—GALVESTON DIVISION:**

Defendant Federal Home Loan Mortgage Corporation ("Freddie Mac") hereby files this its

Motion to Dissolve the Temporary Restraining Order ("TRO") issued by the 412Th Judicial District Court of

Brazoria County, Texas and Brief in Support ("Motion") and respectfully shows the Court as

follows:

## I.    SUMMARY OF ARGUMENT

1.    As detailed below and conclusively established through Freddie Mac's evidence,

the TRO is legally insupportable and nothing more than Plaintiff's <u>second attempt</u> to delay Freddie

Mac in its lawful foreclosure so that Plaintiff can continue to collect rental income on the subject

228-unit multifamily property while failing to pay the monthly debt service, insurance and taxes.

2.    These failures have been ongoing for over 17 months, to the detriment of Freddie

Mac, and the TRO was not and is not justified, as it fails to meet the prerequisites set forth in Rule

65 and the applicable case law.  The ex parte allegations asserted by Plaintiff to obtain the TRO

are legally insupportable and misleadingly false, premised only on an affidavit from an individual

with no documented affiliation to Plaintiff or the Property, and the $500 bond submitted by Plaintiff to support its TRO request to halt foreclosure on a $30,375,000 loan is woefully inadequate. In addition, Plaintiff does not and cannot establish that monetary relief would be inadequate to address any (wrongly) alleged harm. Given these fundamental flaws, the court should immediately dissolve and vacate the TRO.

## II.    APPLICABLE RULES FOR RELIEF SOUGHT

3.    Temporary Restraining Orders are reserved for circumstances in which the applicant can show he or she faces a real and immediate threat of irreparable injury before the court can consider and hear a noticed motion for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters Loc. No. 70*, 415 U.S. 423, 439 (1974) (TRO's "underlying purpose [is] preserving the status quo and preventing irreparable harm just so long as necessary to hold a hearing, and no longer"); *Hope v. Warden York Cnty. Prison*, 956 F.3d 156, 160 (3d Cir. 2020); *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (same); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 422 (4th Cir. 1999) ("a temporary restraining order is intended to preserve the status quo only until a preliminary injunction hearing can be held").

4.    When an action is removed to federal court, "[a]ll injunctions, orders, and other proceedings had in such action prior to its removal shall remain in full force and effect until dissolved or modified by the district court." 28 U.S.C. § 1450.  Accordingly, the state court's TRO remains temporarily operative, but it is subject to reconsideration under the standards governing injunctive relief in federal court. *Id.*

5.   Rule 65 of the Federal Rules of Civil Procedures provides for prompt redress for a party subject to an improvidently granted TRO:

> (4) *Motion to Dissolve.* On 2 days' notice to the party who obtained the order without notice—or on shorter notice set by the court—the adverse party may appear and move

to dissolve or modify the order. The court must then hear and decide the motion as promptly as justice requires.

*See* Fed. R. Civ. P. 65; *See Granny Goose Foods, Inc.* at 423; *Prudential Ins. Co. of Am. v. Sandvold*, 845 F. Supp. 2d 971, 973 (D. Minn. 2012) (holding court may make any change to TRO that is "equitable").

### III.    RELEVANT BACKGROUND FACTS AND PROCEDURAL HISTORY

7.    Defendant Freddie Mac is a government-sponsored enterprise chartered by the Congress of the United States of America to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1451. [1] *See* Akins Declaration.

8.    On or about November 29, 2022, 514 That Way LLC ("That Way") as Borrower, executed a Multifamily Note ("Note") evidencing a $30,375,000.00 loan for That Way's purchase of the Edgewater Apartments located at 514 That Way, Lake Jackson, Texas 77566.  *Id.* To secure repayment of the Note, That Way contemporaneously executed a Multifamily Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing ("Deed of Trust").  As part of the transaction, both the Note and Deed of Trust were assigned to Freddie Mac on November 29, 2022. *Id.*  Khaled Noor, MD, who is listed as a Managing Member for That Way, executed a Guaranty in favor of Freddie Mac. Freddie Mac currently holds the Note and Guaranty and is the current beneficiary of the Deed of Trust (collectively referred to as the "Loan Documents"). *Id.*

9.    The Note has a fixed interest rate of 5.81% and requires interest payments in the amount of $4,902.19 per day, or $147,065.63 per thirty day month. *Id.*

10.    As a result of Plaintiff's years-long, continued monetary default, Freddie Mac has tried, on at least two occasions, to foreclose on the subject property; on both occasions, That Way filed 11th hour court cases to delay the foreclosure sale.

---

[1] In support of this Motion, Freddie Mac relies on the Declaration of Gregory Akins, attached hereto as Exhibit A and incorporated by reference herein. Freddie Mac cites to same as the "Akins Declaration".

**Monetary Default & First Foreclosure**

11.    After That Way failed to make its monthly installment payments for November 1, 2024, Freddie Mac sent That Way a Notice of Default and Reservation of Rights on December 4, 2024.  As reflected in that correspondence, at that time That Way already owed Freddie Mac $208,999.58 in interest and principal and a late charge of $10,574.75.  *Id.*  That Way did not pay the past due sums and the default was not cured.  That Way likewise failed to make its December 1, 2024 and January 1, 2025 payments. Based on this undisputed monetary default, and in accordance with the Loan Documents, on or about January 13, 2025, Freddie Mac provided That Way with a Notice of Default & Acceleration of Loan. At this point, the amounts due totaled $33,066,281.84.  *Id.*

12.    That Way still did not cure the default, and the Edgewater property was posted for non-judicial foreclosure sale in accordance with the Loan Documents.  The foreclosure was posted for a March 4, 2025 sale date. *Id.*

**That Way Delayed Foreclosure by Filing Bankruptcy**

13.    In an effort to stave off or at least delay the March 2025 foreclosure, on February 24, 2025, That Way filed for bankruptcy protection under Case Number 25-90013-1, which was then jointly administered in the Southern District of Texas.  At that time, Freddie Mac sought dismissal of the bankruptcy because it was clear that the Edgewater property could not generate sufficient income to satisfy the monthly debt service, much less taxes, insurance, repairs and other capital expenditures. *See* Bankr. Case at Doc. 154, page 5-9.  The Court thus dismissed the bankruptcy *with prejudice* when That Way could not show a reasonable likelihood of rehabilitation or offer a feasible plan that would address Freddie Mac's interest in the debtors' estates. *See* Bank. Case at Doc. 190.

**Second Foreclosure**

14.    After dismissal of the bankruptcy, Freddie Mac reposted the Edgewater property for foreclosure sale on March 3, 2026.

15.    After the Bankruptcy Court rejected That Way's first effort to delay foreclosure, and faced with the second, impending foreclosure action, on February 26, 2026, That Way filed an ex parte action seeking a Temporary Restraining Order ("TRO") in the 412th Judicial District Court under Cause No. 139239-CV ("State Court").  The ex parte action sought to prevent Freddie Mac from proceeding with its pending March 2, 2026 foreclosure sale. In support of its application, That Way relied upon an affidavit from Saqif Noor, who identifies himself in the affidavit as a "principal" of Plaintiff.  But Noor's name nowhere appears in any of the Loan Documents. He has no disclosed or known ownership interest in the LLC or Property, and it is unclear on what basis he is making factual representations to the Court.[2]

16.    That Way did not serve Freddie Mac with the TRO complaint, and Freddie Mac did not become aware of it until March 2, 2026, four days after the Court had entered the TRO. *See* ECF No.3, Exhibit B. To obtain the TRO, That Way posted a mere $500.00 bond to stymie foreclosure on a defaulted loan where it currently owes over $37,189,733.66 in unpaid principal, interest, late fees, legal fees, and appraisal fees.

17.    The State Court set a preliminary injunction hearing for March 12, 2026.  Freddie Mac timely removed the matter to this Court.

18.    That Way's State Court TRO petition included numerous puzzling allegations, including that Freddie Mac's servicer was threatening to hold their payments "hostage"; that Freddie Mac instituted foreclosure to take the property as real estate owned ("REO") for some

---

[2] That Way's bankruptcy was supported by a declaration from Baruch Teitelbaum. That Way's Voluntary Petition attaches a "Written Consent of Managing Members of 514 That Way LLC" which states that its "sole managing members" are Baruch Teitelbaum and MD Khaled Noor. Likewise, Saqif Noor's name is not listed in any of the organizational charts for That Way.

imaginary benefit of getting a "low interest rate loan 'off their books'", and that foreclosure would wipe out the property's equity.

19.    Although unclear on what basis That Way imagines Freddie Mac's motive to take the Property into REO, the assertions are both baseless and irrelevant.  As detailed herein, nothing could be further from the truth. That Way's own petition concedes they are not making payments. That Way remains in substantial, continuing, monetary default of its obligations under the loan documents

20.    In any event, That Way has no legitimate defense to foreclosure. Indeed, the Bankruptcy Court expressly rejected this same argument about equity loss when it dismissed the bankruptcy action – a decision which That Way did not appeal.

## IV. <u>THE TRO DOES NOT SATISFY RULE 65</u>

21.    Fed. R. Civ. P. 65 sets forth the showing required to obtain a TRO:

(b) Temporary Restraining Order.

(1) *Issuing Without Notice.* The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney **only if**:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition

(2) *Contents; Expiration.* Every temporary restraining order issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record.

(Emphasis added.)

22.    Accordingly, to obtain or maintain a TRO, That Way must establish (1) a likelihood of success on the merits of the case, (2) irreparable harm, (3) how precluding Freddie Mac from foreclosing outweighs Freddie Mac's rights under the Loan Documents and (4) how the public interests would be served by allowing a nonperforming commercial owner to maintain possession of the property to the detriment of tenants and Freddie Mac.  As discussed below, That Way's

proffered bases for relief failed to establish the necessary elements to sustain a TRO and fundamental components of its arguments are also barred by estoppel.

**That Way Has Failed to Establish the Necessary Elements for a TRO**

23.    That Way has failed to establish the necessary elements to support injunctive relief precluding foreclosure. Among other things, That Way cannot demonstrate likelihood of success on the merits because it remains in significant monetary default, and it fails to and cannot identify irreparable harm or public interest to warrant allowing a nonperforming commercial owner to maintain possession of the property to the detriment of the tenants and Freddie Mac.   *See* ECF No. 3 at Exh. B.

**That Way Remains in Monetary Default and Cannot Show Likelihood of Success**

24.    That Way does not dispute that it is and has been in monetary default under the Loan Documents. As of February 24, 2026, That Way owes $3,304,924.00 in monthly debt service payments, $1,741,500.00 in default interest, and $87,681.91 in late fees.   In addition, notwithstanding Freddie Mac's direct request, That Way has refused to provide evidence of property insurance, which itself is a default and has required Freddie Mac to force place costly property insurance at $69,611.79/month, and Freddie Mac will also have to advance property taxes. *See* Akins Declaration.  In the meantime, That Way continues to collect monthly rent it obtains from its tenants while refusing to provide regular updates of occupancy or property operating statements while in default, and neglecting to show evidence of valid insurance protecting the collateral. *Id.*

**There is No Irreparable Harm.**

25.    That Way cannot show irreparable harm from the foreclosure.  The property subject to foreclosure is a 228-unit multifamily rental property that That Way purchased as a commercial investment. Loss of a commercial property through default and foreclosure is a purely economic event that does not give rise to irreparable harm. See *First Sec. Bank v. W & W Farms, Inc.*, No.

2:19-CV-91-Z, 2020 U.S. Dist. LEXIS 18097, 2020 WL 570814, *11 (N.D. Tex. Feb. 4, 2020)(holding courts are "less likely to identify irreparable harm in the loss of commercial property such as the property at issue in this case" and instead look to "the 'irreparability' of the loss" through monetary remedies). Further, That Way cannot put forth any showing that this property is unique or anything other than an investment property on which it remains in serious default to Freddie Mac.  This lack of irreparable harm *alone* dooms its request for equitable relief. " See *Baker v. U.S. Hous. & Urb. Dev., No*. SA:19-CV-1049-DAE, 2019 U.S. Dist. LEXIS 225989, 2019 WL 7759504, *5 (W.D. Tex. Oct. 2, 2019)(likelihood of success is the 'main bearing wall'" of the test).

26.     Thus, even if Freddie Mac's foreclosure were invalid (which, as discussed above, it is not), That Way would have recourse through a damages action.  Where, as here, a movant has adequate remedy through future damages action, there is no irreparable harm.  *Winston v. General Drivers, Warehousemen & Helpers Local Un*., 879 F.Supp. 719, 725 (W.D. Ky. 1995) (monetary breach of contract has adequate remedy at law besides injunction because monetary damages are not illusory).

27.     That Way argues that foreclosure will deprive it of equity. That Way's only ostensible support for this argument is a single conclusory and unsupported allegation in Saqif Noor's flawed affidavit. In reality, the property has no equity. A value assessment obtained in March 2026 estimates the value of the property at $23,940,000.00 based on current occupancy rates and conditions, which leaves negative equity of $6,435,000.00 compared to the loan's unpaid principal balance. *See* Akins Declaration. That Way's argument is also of no moment because, even if there were surplus equity, it would be paid to That Way after sale of the property.[3]

---

[3] Texas state law provides mechanisms to pay borrower equity following property sale. *See* Tex. Prop. Code § 51.002 et seq.

**There is No Public Interest in Allowing a Nonperforming Commercial Owner to Maintain Possession of the Property.**

28.    That Way also cannot show that public interest supports the TRO.  As discussed, That Way is a nonperforming commercial owner seeking to maintain possession of the property that it refuses to maintain.  There is no public interest in extending That Way's possession of the property to the detriment of tenants and Freddie Mac.

**Plaintiff is Collaterally Estopped from Asserting its "Loss of Equity" Argument**

29.    Plaintiff's TRO petition was based largely on That Way's claim that foreclosure will wipe out the property's equity.  *See* ECF No. 3 at page 30-31.  Not only is this argument baseless and supported only by Saqif Noor's two-sentence speculation in his affidavit, but ***the Bankruptcy Court squarely rejected the same argument*** when it dismissed the bankruptcy action. *See* Akins Declaration, see also Bankr. Case at Doc. 190. The bankruptcy court's decision in this issue estops That Way from asserting it here.

30.    The party seeking to invoke collateral estoppel must establish: (1) that the facts sought to be litigated in the second action were fully and fairly litigated in the first; (2) that those facts were essential to the judgment in the first; and (3) that the parties were adversaries in the first action. *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex. 1984). Here, That Way is estopped from making its equity loss argument.  Both That Way and Freddie Mac were parties to the bankruptcy case (That Way as debtor and Freddie Mac as secured creditor). That Way made the same contentions regarding property equity and was afforded the opportunity to establish a plan that would preserve the alleged equity.  The bankruptcy court rejected this claim in dismissing the bankruptcy petition with prejudice.  *See* Bankr. Case at Doc. 190. That way is bound by the bankruptcy court's decision on this issue and this Court should not allow That Way' to weaponize the TRO process and rejuvenate baseless assertions that the bankruptcy court already ruled upon.

**Unclean Hands Preclude Injunctive Relief**

31.    That Way also has unclean hands that preclude TRO or any other injunctive or equitable relief. *See Polk Bros., Inc. v. Forest City Enterprises, Inc*., 776 F.2d 185, 193 (7th Cir.) 1985)(holding "If the plaintiff creates or contributes to the situation on which it relies, the court denies equitable relief in order to deter the wrongful conduct").  Here, among other things, That Way has failed to pay its loan obligations, failed to maintain and preserve the property, and misused the courts to create baseless delays and siphon funds from the property after default. That Way has created the very situation in which it now finds itself, and engaged in inequitable conduct. These actions preclude equitable relief and warrant dissolution of the TRO.  *See GoTo.com v. Walt Disney Co.* 202 E3d 119, 1209 (9th Cir. 2000); *see also* Akins Declaration.

**That Way's Claims for Declaratory Judgment and Breach of Contract Are Unsupported**

32.    That Way also asserts claims for (1) declaratory judgment and (2) breach of contract.  However, declaratory relief is not available under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, which applies where, as here, a declaratory judgement action is filed in state court and is subsequently removed to federal court. *Bell v. Bank of America Home Loan Servicing LP*, No. 4:11-CV-02085, 2012 WL 568755. at *8 (S.D. Tex. Feb. 21, 2012) (action removed to federal court is "converted to one brought under the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202."). The availability of a declaratory judgment under the Declaratory Judgment Act depends on the existence of a judicially remediable right, *see Bell,* 2012 WL568755, at *8, which requires Plaintiff to show a continuing controversy between the adverse parties that is both "real and immediate." *Bauer v. Texas*, 341 F.3d 352, 358 (5th Cir. 2003). That Way cannot show a "real and immediate" continuing controversy because That Way's claims amount to nothing more than a reparable commercial monetary dispute.  *See also In re Entxar Elloprop LLC*, adv No. 24-05004-CAG, In the United States Bankruptcy Court For the Western District of Texas—San Antonio Divison; Order Granting ECF No. 5 (holding because Plaintiff has alleged nothing more

than breach of contract claim, there is no continuing controversy and thus neither real nor immediate and summary judgment is granted on declaratory judgment claim).

33.     The breach of contract claim fails as a basis for injunctive relief because That Way cannot show that monetary damages are insufficient relief.   Preliminary injunction is an extraordinary and drastic remedy, *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572-73 (5th Cir. 1974), which are inappropriate if there is an adequate remedy at law. *See Matthews v. Rodgers*, 284 U.S. 521, 525 (1932). Here, That Way asserts alleges only monetary injury, such as loss of income and equity, which is not irreparable injury and has adequate remedy in state court. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) (temporary loss of income or other alleged injury involving only the loss of money is not irreparable injury); *County of Santa Barbara v. Hickel*, 426 F.2d 164 (9th Cir. 1970), cert. denied, 400 U.S. 499 (1971); *see also Roland Mach. Co. v. Dresser Indus.*, 749 F2d 380,386 (7th Cir. 1984) (irreparable injury needed for injunction); *Winston v. General Drivers, Warehousemen & Helpers Local Un.*, 879 F.Supp. 719, 725 (W.D. Ky. 1995) (monetary breach of contract has adequate remedy at law besides injunction because monetary damages are not illusory); *see also Farrow v. CitiMortgage, Inc.*, 2016 U.S. Dist. LEXIS 8073(holding breach of contract claim gives rise to monetary damages only).

**The Bond is Woefully Inadequate**

34.     While there is no valid basis to maintain the TRO, the miniscule amount of the bond required by the state court in this matter is woefully insufficient to support an order halting Freddie Mac's efforts to recover on an outstanding debt of more than $37 million that is continuing to accrue interest and other fees and costs while That Way improperly delays the foreclosure process. Rule 65(c) requires that "[t]he court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by a party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c).

35.     Courts interpret this to require a bond sufficient to secure the costs and damages the restrained party may suffer from the TRO. *U.S. D.I.D. Corp. v. Windstream Commc'ns, Inc.*, 775 F.3d 128, 141 (2d Cir. 2014).[4] The primary purpose of the bond is to assure the enjoined party that it can collect damages resulting from a "wrongful" injunction "without further litigation and without regard to the possible insolvency of the plaintiff," *Global NAPS, Inc. v. Verizon New Eng., Inc.*, 489 F.3d 13, 21 (1st Cir. 2007); *see Nokia Corp. v. InterDigital, Inc.*, 645 F.3d 553, 560 (2d Cir. 2011); *Brown v. City of Upper Arlington,* 637 F.3d 668, 674 (6th Cir. 2011), and to deter rash or frivolous applications. *Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 391 (3d Cir. 2021). Either party may move to have the amount of the bond increased or decreased.  *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007*); Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1142 (7th Cir. 1994); *Lab'y Corp. of Am. Holdings v. Kearns*, 84 F. Supp. 3d 447, 465–66 (M.D.N.C. 2015) ("should either party conclude that a different figure would be proper, it may move for adjustment of the bond amount while the preliminary injunction is still in effect"), and the burden is on the party seeking the change. *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007).

36.     Here, Freddie Mac's recovery for That Way's improperly sought TRO is limited to the bond amount. *Roche Diagnostics Corp. v. Med. Automation Sys., Inc.*, 646 F.3d 424, 428 (7th Cir. 2011) ("damages payable to a person injured by an erroneously issued injunction cannot exceed the amount of the bond"), which is $500 against millions of dollars in unpaid principal and interest, as well as imminent, significant forced place insurance expenses, tax costs, and other carrying expenses that accrue each day Freddie Mac cannot foreclose on the property.[5]

---

[4] A preliminary injunction bond is intended to provide security for the costs and damages an enjoined party suffers while complying with the preliminary injunction. *Hassay v. Mayor*, 955 F. Supp. 2d 505, 527 (D. Md. 2013); *see Hoechst Diafoil Co. v. Nan Ya Plastics Corp*., 174 F.3d 411, 421 n.3 (4th Cir. 1999).
[5] Just to post the property for foreclosure sale (now twice), Freddie Mac has incurred over $8,300.00 in publication expenses, not including legal fees.  *See* Akins Declaration.

**Federal Home Loan Mortgage Corporation's Motion to Dissolve Temporary Restraining Order**     **Page 12**

37.    Moreover, there is no indication That Way has any intention to address the loan debt, maintain the property, cure the defaults, or forward monthly rent payments to Freddie Mac. Should the Court allow the TRO to be extended, Freddie Mac seeks a cash bond of the amounts to cure the accelerated debt, payment of taxes and insurance, correction of non-monetary defaults and immediate turnover of ongoing monthly rent payments.

**Emergency Hearing Required**

38.    As discussed above, That Way does not and cannot meet the basic elements for a TRO, and the pending TRO continues to significantly and immediately harm Freddie Mac.

**WHEREFORE,** Freddie Mac requests that the Court set this Motion for hearing, dissolve the TRO, preclude any further injunctive relief of Plaintiff and allow it to proceed with foreclosure under the Loan Documents and in compliance with the applicable state law.

Respectfully submitted,

By:    */s/ Brent W. Martinelli*
**BRENT W. MARTINELLI**
State Bar No. 24037037
Southern District ID No. 2847414

**QUINTAIROS, PRIETO, WOOD & BOYER, P.A.**
1700 Pacific Avenue, Suite 4545
Dallas, Texas 75201
Telephone: (214)754-8755
Facsimile:  (214)754-8744
Email: brent.martinelli@qpwblaw.com

**ATTORNEYS FOR DEFENDANT**

## CERTIFICATE OF SERVICE

The undersigned certifies that on March 25, 2026 a true and correct copy of the foregoing document was served through the Court's electronic filing system to Plaintiff's counsel of record:

Jason D. Kraus
The Kraus Law Firm
jdk@krausatorneys.com
19500 State Highway 249
Suite 350
Houston, Texas 77070

*/s/ Brent W. Martinelli*
**BRENT W. MARTINELLI**

# EXHIBIT A